[Crim. No. 20825. Second Dist., Div. Five. June 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL A. NORWOOD, Defendant and Appellant.

**COUNSEL**

G. Tom Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Charles P. Just, Kenneth M. Malovos, Marjory Winston Parker and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**AISO, J.**—Defendant Paul A. Norwood and Willie Curtis Andrews[1] were charged by information with four separate violations of Penal Code section 475a. Counts I and II specified the instrument involved in each of those counts as "a completed warrant." The specific pleading of counts III and IV alleged, in part, possession of "a completed money order . . . with the intent to defraud Frank Gentile and American Express." A prior robbery conviction was also alleged against defendant.

[1]Apparently tried separately and not a party to this appeal.

A court sitting without a jury granted defendant's motion to acquit pursuant to Penal Code section 1118 as to count IV only and denied it as to counts I, II, and III. At the conclusion of the defense case, it found defendant guilty on said three counts. No disposition was made as to the alleged prior felony conviction.[2] Probation was denied. Defendant was sentenced to concurrent one-year terms in the county jail on the three counts, with credit for time spent in custody (four months) prior to imposition of sentence. Defendant appeals from the judgment.

Defendant contends: (1) the trial court erred in denying his motion under Penal Code section 1118 as to counts I, II, and III; and (2) the evidence is insufficient to support the convictions. This court upon its own motion asked for supplemental briefing on whether a county warrant, such as those introduced in proof of counts I and II, comes within the purview of Penal Code section 475a[3] which specifies only "a completed check, money order, or traveler's check." We have concluded that the judgment insofar as counts I and II are concerned must be reversed for the reasons which we shall set forth below, but that it should be affirmed as to count III. We defer detailed summarization of the evidence until after we dispose of counts I and II on legal grounds and then take up the assignments of error urged by defendant as to his conviction on count III.

### No Corpus Delicti Under Counts I and II.

We note *in limine* that we may properly consider whether the corpus delicti of a violation of Penal Code section 475a was established by the introduction of a Los Angeles County "Auditor Controller's General Warrant" in proof thereof, even though the issue was not raised by defendant either in the trial court or before us. ■ An appellate court may note errors not raised by the parties if justice requires it. (*Silber* v. *United States* (1962) 370 U.S. 717, 718 [8 L.Ed.2d 798, 799, 82 S.Ct. 1287, 1288]; *People* v. *Renchie* (1962) 201 Cal.App.2d 1, 7 [19 Cal.Rptr. 734]; *People* v. *Ross* (1961) 198 Cal.App.2d 723, 730 [18 Cal.Rptr. 307].) ■ The failure of an accusatory pleading to state a public offense is not waived by a defendant's failure to demur (Pen. Code, § 1012; *People* v.

---

[2]Tantamount to a negative finding. (*In re Candelario* (1970) 3 Cal.3d 702, 706-707 [91 Cal.Rptr. 497, 477 P.2d 729].)

[3]This section provides: "Every person who has in his possession a completed check, money order, or traveler's check, whether the parties thereto are real or fictitious, with intention to utter or pass the same, or to permit, cause, or procure the same to be uttered or passed, to defraud any person, is punishable by imprisonment in the state prison for not less than 1 nor more than 14 years, or by imprisonment in the county jail for not more than one year."

*Smith* (1894) 103 Cal. 563, 566 [37 P. 516]) or to move in arrest of judgment (*People* v. *Grinnell* (1908) 9 Cal.App. 238, 239-240 [98 P. 681]). ■ A matter normally not reviewable upon direct appeal, but which is shown by the appeal record to be vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal. (*People* v. *Bautista* (1970) 6 Cal.App.3d 344, 351-352 [85 Cal.Rptr. 688]; *People* v. *Glaser* (1965) 238 Cal.App.2d 819, 824 [48 Cal.Rptr. 427], cert. den. 385 U.S. 880 [17 L.Ed.2d 107, 87 S.Ct. 164].) ■ If the statute under which a defendant is convicted does not prohibit the conduct proved, a writ of habeas corpus will issue. (*In re Zerbe* (1964) 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]; *In re Bevill* (1968) 68 Cal.2d 854, 863 [69 Cal.Rptr. 599, 442 P.2d 679].) A conviction where no evidence supports the offense charged has been held to violate the due process provisions of the Fourteenth Amendment. (Cf. *Thompson* v. *Louisville* (1960) 362 U.S. 199, 206 [4 L.Ed.2d 654, 659, 80 S.Ct. 624, 629]; *Shuttlesworth* v. *Birmingham* (1965) 382 U.S. 87, 93-95 [15 L.Ed.2d 176, 180-182, 86 S.Ct. 211, 214-216].)

■ We hold as to counts I and II that the essential elements of a violation of Penal Code section 475a were not established. The accusatory pleading specified a "warrant"; the evidence was a Los Angeles County "Auditor Controller's General Warrant," which is not a check, a money order, or a traveler's check explicitly enumerated in the section.

A. ■ *The Warrant Not a Check.* The pertinent formal portions of the warrant[4] read:

"Auditor Controller's General Warrant 16-66
 County of Los Angeles 1220

The Treasurer of the County of Los Angeles will pay to the order of:

 Apr 1 1971
 Los Angeles, California

[Name and address of payee filled in] $161.00

 General Fund
 Approved
 Mark H. Bloodgood Auditor-Controller By
 [facsimile signature] J. S. Rasmussen"

In form, this is essentially the same as the warrant set forth in *Dana* v. *City & County of San Francisco* (1861) 19 Cal. 486, 491. It was there

---

[4]We use the singular since the warrants under the two counts are of the same type.

held that the instrument was not negotiable, only an assignment of a right to funds notwithstanding the words "to the order of" preceding the payee's name. In essence, the doctrine of a "holder in due course" was held inapplicable to the instrument. *Dana* has been followed in California. (See *Bank of Santa Cruz County* v. *Bartlett* (1889) 78 Cal. 301, 303 [20 P. 682]; *Ser-Vis* v. *Victor Valley Irr. Dist.* (1923) 190 Cal. 732, 740 [214 P. 223]; *A. G. Spalding & Bros.* v. *Contra Costa County* (1936) 12 Cal.App.2d 262, 264 [55 P.2d 520].)[5]

The terms "draft" or "check" may at times encompass a non-negotiable instrument under the Uniform Commercial Code (§ 3104, subd. (3)), but this warrant nonetheless is not a check. To be a check the instrument must be a draft drawn on a bank and made payable on demand. (Com. Code, § 3104, subd. (2)(b).) A draft is an order to pay a sum certain in money, signed by the drawer, payable on demand or at a definite time, and to order or bearer. (Com. Code, § 3104, subds. (1) and (2)(a).) "An 'order' is a direction to pay and must be more than an authorization or request." (Com. Code, § 3102, subd. (1)(b).) "An instrument which states that it is payable at a bank is not of itself an order or authorization to the bank to pay it unless the bank is the drawee." (Com. Code, § 3121.)

The only reference to a bank on the warrant in question is the esoteric symbol $\frac{16\text{-}66}{1220}$ ; the denominator (routing symbol) indicating the Los Angeles Federal Reserve Bank by "1220" and the numerator (transit number) indicating that the bank is a Los Angeles bank by "16," and the specific bank in Los Angeles by "66." (See 2 Cal. Commercial Law (Cont.Ed.Bar 1964) § 9.11, pp. 160-161.) Just as a serial number on a given check is not considered a part of the instrument in determining its legal nature, the routing and transit code numbers are not to be considered a part of the instrument in resolving its legal incidents. (See Hart and Willier, *Essential Attributes of Commercial Paper* (1971) 1 N.M. L.Rev. 479, 494.)

Although it does not define the term "check-warrant form,"[6] Govern-

---

[5]But see *United States* v. *First National Bank of Boston* (D. Mass. 1967) 263 F.Supp. 298, 301-302, holding that although a postal money order is not a negotiable instrument, some aspects of negotiability may be ascribed to it by considering the bank transit numbers in light of a regulation providing that the money order could be cashed at any bank. Thus a bank having paid out on postal money orders (stolen from a post office) in good faith and without notice did not have to refund the moneys which the government had earlier paid to the bank on the money orders.

[6]We need not define it here, but maybe it refers to a warrant in the form discussed in *United States* v. *Estate of Swan* (5th Cir. 1971) 441 F.2d 1082, 1083, 1084. The instrument was entitled, "Trust Fund Warrant," but it was otherwise drawn on a bank

ment Code section 53911 empowers a county, among other local governmental entities, to convert such an instrument into a check.[7] However, we find no "direction to the depository of the funds to pay the funds to the order of the payee" nor even the name of the depository on the face of the warrant. The Attorney General has not called our attention to any official document, dehors the warrant, of which we can take judicial notice to ascertain whether the County of Los Angeles has opted to exercise this statutory authorization, nor has he offered to prove such a document upon a remand of the cause to the trial court. This statute, in any event, amounts to legislative recognition that the normal county warrant is not a check.

Applying the foregoing criteria to the warrant in question, we hold that it is not a check.

 B. *The Warrant Not a Money Order.* The term, "money order," may encompass non-negotiable as well as negotiable instruments.[8] It may be issued by a governmental agency,[9] a bank,[10] or a private person or entity authorized to issue same.[11] The essential characteristic common to all these various types of money orders is that they are purchased for the purpose of

by the county clerk and met all the requisites for a check specified by the Uniform Commercial Code as adopted in Texas. The parties conceded that it was a negotiable instrument.

[7]Government Code section 53911: "The governing body may authorize the use of *check-warrant forms,* to be drawn by its appropriate warrant issuing officer or officers upon the custodian of its funds, so prepared that the custodian may, by subscribing a *direction* to the *depository of the funds* to pay the funds to the order of the payee, convert the instrument to a check or, by subscribing an endorsement that the warrant is not paid for want of funds, convert the instrument to an interest bearing warrant and the governing body may direct that check-warrants shall not be delivered to the payees named therein until the direction or indorsement has been subscribed by the *custodian* of its funds." (Italics added; note distinction made between depository of funds and custodian of funds.)

[8]See, e.g., *Garden Check Cashing Service, Inc.* v. *First Nat. City Bank* (1966) 25 App.Div.2d 137 [267 N.Y.S.2d 698], affirmed 18 N.Y.2d 941 [277 N.Y.S.2d 141, 223 N.E.2d 566]; *Nation-Wide Check Corp.* v. *Banks* (D.C.Mun.App. 1969) 260 A.2d 367; *Bolognesi* v. *United States* (2d Cir. 1911) 189 F. 335, certiorari denied 223 U.S. 726 [56 L.Ed. 632, 32 S.Ct. 525].

[9]E.g., Post Office or now the United States Postal Service. (39 U.S.C.A. § 5101 et seq. per Pub.L. 91-375, § 5 (f).)

[10]*Bank of America* v. *Cranston* (1967) 252 Cal.App.2d 208, 217 [60 Cal.Rptr. 336]. A bank may issue a money order either in the form of a "bank money order" or a "personal money order." (See 2 Anderson, Uniform Commercial Code (1971) § 3-104:20, pp. 613-614; Brady on Bank Checks (4th ed. by Bailey, 1969) § 1.7, pp. 10-12; Clark & Squillante, The Law of Bank Deposits, Collections and Credit Cards (1970) pp. 51-56.)

[11]See, e.g., Check Sellers and Cashers Law (Fin. Code, § 12000 et seq.). Judicial notice may also be taken of American Express money orders and Western Union money orders.

paying a debt or to transmit funds upon the credit of the issuer of the money order. At the time of its purchase, the purchaser pays to the issuer the principal amount of the money order and usually also pays a fee to the issuer for the issuance of the instrument or the transmission of the principal amount represented by it. No such consideration was paid by the payee or any other lawful holder to cause the warrant in question to be issued. Lacking this essential characteristic of a money order, we find the warrant not to be a money order.

C. *The Warrant Not a Traveler's Check.* One glance at the warrant dispenses with the need of further elucidation on this point.

D. ■ *Section 475a Restricted to Checks, Money Orders, and Traveler's Checks.* Penal Code section 475a specifies only these three types of commercial paper; it contains no omnibus catch-all phrase, such as "or any instrument for the payment of money." This is in great contrast with other sections in the same chapter of the Penal Code. For instance, the general forgery section (Pen. Code, § 470) specifically mentions "county order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind." Penal Code section 476 contains an omnibus catch-all phrase, "or other instrument in writing for the payment of money." ■ It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes. (*People* v. *Kuhn* (1963) 216 Cal.App.2d 695, 699 [31 Cal.Rptr. 253]; *City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318]; *Strauss* v. *Board of Supervisors* (1960) 181 Cal.App.2d 133, 142 [5 Cal.Rptr. 294].) When a section specifically enumerates one kind of instrument which can be the subject of a larceny, but that type of instrument is omitted in another section further describing types of instruments which may be the subject of that crime, the legislative intent is construed as excluding the type of instrument specifically mentioned in the first but not in the latter. (*People* v. *Dadmun* (1913) 23 Cal.App. 290, 292 [137 P. 1071]; cf. *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].) ■ Under these rules of statutory construction, we find the legislative intent to restrict the application of section 475a to just the three types of commercial paper specifically enumerated.

We respectfully invite the attention of the Legislature to this situation. In these times when warrants of the kind involved in this case continue to grow in use and are left in mailboxes, easy to pilfer, especially in areas

where payees of the warrants reside, it may well be that a statute covering fraudulent possession of a completed warrant issued by a public body should be passed in order to protect adequately the payee, holders, and the public entity. We do not direct a dismissal of the case as to matters covered by these two counts because the evidence reflects the possibility that defendant was guilty of receiving or withholding stolen property. (Pen. Code, § 496.) The warrant could be the subject of a theft (Pen. Code, §§ 492, 494) and anything that could be the subject of a theft can also be property under Penal Code section 496. Since our ruling as to Penal Code section 475a is a case of first impression, we do not think that it falls under the general rule of *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], prohibiting multiple prosecutions under Penal Code section 654.

*Penal Code Section 1118 Motion Properly Denied as to Count III.*

We find no error in the trial court's having denied defendant's motion for acquittal under Penal Code section 1118.[12] The evidence produced by the People in its case in chief showed:

On April 27, 1971, Officer Victor J. Terry of the Los Angeles Police Department observed defendant place two Los Angeles County warrants later adduced in proof of counts I and II (exhibits 1 and 2), an American Express Company traveler's check introduced in proof of count III (exhibit 3) and a driver's license in the name of Swan Buchanan (exhibit 6) under the armrest of a vehicle in which defendant was a passenger. He also recovered two other blank checks (blue on the faces thereof) from under the armrest and a second American Express traveler's check (exhibit 4) adduced in proof of count IV from the pocket of Willie Curtis Andrews, the driver of the vehicle. Officer Terry transported defendant to police headquarters where he had defendant execute handwriting exemplars. He did not at any time confront defendant with exhibits 1 through 4.

Exhibit 1 was the county warrant, dated April 1, 1971, and made payable to the order of Randolph L. Brown, 2205 East 118th Street, Los Angeles, in the amount of $161 and bore an indorsement in his name. It was stipulated that Brown would testify that: he lives at the above address,

---

[12]The section in part pertinent here provides: "In a case tried by the court without a jury, . . . the court on motion of the defendant . . . shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence *then before it,* finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal . . . is not granted, the defendant may offer evidence without first having reserved that right." (Italics added.)

is blind and a recipient of county assistance, did not receive his April 1971 "check," had reported it stolen, and neither indorsed it himself nor gave anyone else permission to possess or indorse it.

Exhibit 2 was the county warrant, dated April 1, 1971, and made payable to the order of Emma M. Brown, 2205 East 118th Street, Los Angeles, in the amount of $153. It was not indorsed. It was stipulated that Mrs. Brown would testify that: she too lives at 2205 East 118th Street, is a recipient of county old age assistance, failed to receive her April 1971 "check," reported it stolen, and gave no one permission to have the "check" in his possession.

Exhibits 3 and 4 bore the name of Frank R. Gentile as the purchaser. It was stipulated that Gentile would testify that: these items were removed from the trunk of his car on January 27, 1971, without his permission, the signature at the top of each money order (place for purchaser to sign) was his, but the purported counter-signature at the bottom of each was neither his nor authorized by him. The counter-signatures placed on exhibits 3 and 4 differ from each other and from Gentile's signatures even to a layman's observation.

Sergeant Payan of the Los Angeles Police Department interviewed defendant, while he was in custody, after first advising him of his *Miranda* rights. Defendant denied knowing Randolph Brown, Mrs. Emma Brown, or Frank Gentile. The officer showed defendant People's exhibits 1 through 4, which were then enclosed in celluloid check protectors to prevent defendant's direct contact with them. Defendant informed the officer that he had never touched nor had he ever seen the warrants ("the Brown checks") or the "American Express checks."

Jay Hess, a fingerprint expert, identified a fingerprint lifted from the Emma Brown warrant (exhibit 2) as that of defendant's right thumb.

Although the instrument is specifically pleaded as a "money order" instead of a "traveler's check" in count III, no demurrer was interposed and defendant had notice that a traveler's check was meant from the testimony and exhibits introduced at his preliminary hearing,[13] so that defendant was not prejudiced by this error in form only.

 The rule applied in affirming a trial court's denial of a Penal Code section 1118 motion in *People* v. *Brown* (1969) 1 Cal.App.3d 161

[13]The transcript of the preliminary hearing is before us as part of the clerk's transcript in connection with defendant's Penal Code section 1538.5 motion in the trial court, which was denied; no issue concerning that motion and ruling is raised on this appeal, however.

[81 Cal.Rptr. 401], was stated at page 166: "When there is no admissible evidence to connect defendant with the crime charged, the court is under legal compulsion to grant a motion for acquittal (*People* v. *Clark,* 62 Cal.2d 870, 881 [44 Cal.Rptr. 784, 402 P.2d 856]). There is no such compulsion where the evidence presented by the People is sufficient to sustain a conviction, when it is presumed that any permissible inference pointing toward guilt was made by the court and that every question of fact was resolved in favor of guilt." As the court pointed out in *Clark* the issue in that case was within the area of being a factual determination, just as it is on count III in this case.

 Exhibit 3 was a traveler's check completed within the meaning of Penal Code section 475a. Defendant's possession could have been found upon the basis of Officer Terry's testimony that he saw defendant secrete this traveler's check along with the warrants (exhibits 1 and 2), Buchanan's driver's license (exhibit 6), and two other blank checks, together with defendant's thumbprint being found on Emma Brown's warrant (exhibit 2). The necessary fraudulent intent may be inferred from defendant's unauthorized possession of these various exhibits. In this connection, the evidence adduced under counts I and II may also be considered even though defendant was entitled to an acquittal on the grounds we have explicated. It is settled law in California that evidence adduced in proof of a criminal charge of which defendant is acquitted may nevertheless be considered upon other criminal charges if the evidence is otherwise competent. (*People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507].) The indorsement on the warrant (exhibit 1) was a forgery, as was the counter-signature on the traveler's check (exhibit 3). Possession of forged documents is evidence of knowledge of their spurious nature (*People* v. *Reisdorff* (1971) 17 Cal.App.3d 675, 679 [95 Cal.Rptr. 224]; *People* v. *Rosborough* (1960) 178 Cal.App.2d 156, 163 [2 Cal.Rptr. 669]). The unauthorized possession of more than one such instrument for the payment of money and a driver's license made out in another's name is evidence of fraudulent intent. The trial court could have found that defendant's denial to Sergeant Payan that he had never seen or touched the warrants or traveler's checks was a lie betraying a consciousness of guilt (cf. *People* v. *Osslo* (1958) 50 Cal.2d 75, 93 [323 P.2d 397], cert. den. 357 U.S. 907 [2 L.Ed.2d 1157, 78 S.Ct. 1152]; see Fricke, Cal. Criminal Evidence [7th ed. by Alarcon, 1966], pp. 91-92). This denial also strongly supports the inference that in placing the items beneath the armrest defendant was attempting either to hide them from the arresting officer or to disassociate himself from them because of the officer's presence, again sug-

gesting that he was motivated by a consciousness of guilt. Consequently, there was no error in denying the motion insofar as count III is concerned.

### Evidence Sustains Conviction on Count III.

■ Following the denial of the section 1118 motion as to counts I, II, and III, defendant put on a defense. He called Officer William F. Roberts, who was the other arresting officer, but elicited no testimony favorable to defendant other than the fact that one of the two traveler's checks in evidence was retrieved from the pocket of the driver of the vehicle, Andrews. Officer Roberts corroborated Officer Terry's testimony that he recovered "two county checks [sic], two traveler's checks and two blank checks" from inside the vehicle. One of these two traveler's checks was the one recovered from Andrews' pocket.

It was stipulated that defendant "was not the person who took the two checks [sic] in Count I and Count II from the residence of Randolph Brown and Emma Brown on April 1st, 1971."

Defendant testified on his own behalf: He was a passenger in the car owned and driven by Andrews. He had met Andrews only once before the occasion of the arrest in this case. He saw Andrews stopping for the light at Florence and San Pedro Streets, had asked for a ride home, and had ridden just six blocks when stopped by the police. He denied having placed anything under the armrest of the car; that he did make a motion towards the armrest after the police stopped the car to pick up a pack of cigarettes. He did not see exhibits 1 through 4 prior to his being stopped. He did not see the officer find any "checks [sic] underneath the armrest" or at all. Officer Terry took the various items from his shirt pocket and showed them to him by laying them down on the desk. He picked up only one, namely, exhibit 2. The items were not enclosed in any check protectors when shown to him at police headquarters on the night of his arrest on April 27, 1971.

The additional evidence, considered in the light of that evidence summarized under our discussion concerning the Penal Code section 1118 motion, amply supports the conviction. What we observed previously concerning the evidence adduced by the People in its case in chief is equally, if not more so, applicable here. It is especially significant that defendant states that he touched only the item admitted into evidence on which his thumbprint was found, and then attempts to explain its presence by an explanation at odds with that given by Officer Terry. This conflict in the evidence and the issue of credibility was for the trier of fact to resolve. It is presumed that the trial court also observed the

demeanor of defendant when it denied admission of a blank check imprinted with the names of Edward P. Reddeck, Jr., and Darleen Reddeck (exhibit 8 for identification only), which also had a fingerprint of defendant upon it, upon the ground that Officer Terry had not laid a foundation that this was one of the two blank checks removed from underneath the armrest of the vehicle. Applying the well-known rule of the appellate court's function in determining a contention of insufficiency of evidence (see, e.g., *People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Johnson* (1969) 276 Cal.App.2d 232, 239 [80 Cal.Rptr. 683]), we find the conviction amply sustained by the evidence as to count III.

### Disposition

The judgment is reversed as to counts I and II; the judgment is affirmed as to count III.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 16, 1972.