No. 87-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

KATHRYN DIANNE TAYLOR, a/k/a NAOMI
D. SCHIMETZ,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David W. Harman, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        Susan Loehn, County Attorney, Libby, Montana
        Scott B. Spencer, Deputy County Attorney, Libby

---

Submitted on Briefs:  Aug. 27, 1987

Decided: November 5, 1987

Filed:

NOV 5 - 1987

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Kathryn Dianne Taylor, sometimes known as Naomi D. Schimetz, now in her mid-40's is a social failure. That would be a verdict of society, or of any doctor, banker, lawyer or judge reviewing her case. She has been in and out of jailhouses, more or less constantly since 1973. Her crimes are not violent, involving the issuance of bad checks or forgeries. Though arrested in 1975 for DUI, there is no record here of drug or alcohol abuse, but she is addicted to tobacco. She is probably a liar, or at least has fantasies about her past. Though she claims to have worked as a nurse in Missoula, and as a waitress or at unskilled jobs, she has little or no work record.

She was released from the Women's Correctional Center at Warm Springs, Montana, on November 22, 1985. She turned up in Libby, Montana, on May 29, 1986, when she was convicted of issuing bad checks, a theft charge, which resulted in three months in jail. On November 18, 1986, again in Libby, she was convicted of issuing bad checks and given six months on each count with all but 30 days suspended. On February 3, 1987, again in Libby, she was convicted of issuing bad checks and given 30 days in jail. For reasons unclear, her post-conviction report says she was denied "work fare."

This case involves her activities beginning on March 5, 1987. Between then and March 15, she purchased meals and other merchandise from Libby merchants by passing off savings withdrawal slips as checks which the merchants cashed. She negotiated 9 such slips, for an overall total of $139.20. Three such withdrawal slips, typical of all the rest follow:

| SAVINGS WITHDRAWAL | must be presented by the savings customer in person or by mail.

ACCT. #

NAME _Super 8 Motel_

Date _March 5_ 19_87_

93-285
921

DEDUCT ABOVE SUM FROM MY SAVINGS ACCOUNT
ON DEPOSIT WITH:

Dollars $ _14.88_

R3

295-4033

**First National Bank in Libby**
LIBBY, MONTANA 59923

K.ATH1- 517-453095. TH

⑆092102851⑆

SIGN HERE _Naomi D. Schmitz_

ADDRESS _Box 847 Troy Mont_

_12 mi up W030 Creek 2nd House on Right._

8/25/86

---

_Checking_

| SAVINGS WITHDRAWAL | must be presented by the savings customer in person or by mail.

ACCT. # _10 66 75_

NAME _Gina's Cafe_

Date _March 6_ 19_86_

93-285
921

_Nine dollars 40 Cents_

DEDUCT ABOVE SUM FROM MY SAVINGS ACCOUNT
ON DEPOSIT WITH:

Dollars $ _9.40_

R9

**First National Bank in Libby**
LIBBY, MONTANA 59923

⑆092102851⑆ 51745-3095

293-4033

SIGN HERE _Naomi D. Schmitz_

ADDRESS _Hartmans Trailor Court_

070 ⑆000000940⑆

8/25/86

---

_Checking_

| SAVINGS WITHDRAWAL | must be presented by the savings customer in person or by mail.

ACCT. # _10 66 75_

NAME _Gina's Till Diner_

Date _March 7_ 19_87_

93-285
921

_Fifteen dollars._

DEDUCT ABOVE SUM FROM MY SAVINGS ACCOUNT
ON DEPOSIT WITH:

Dollars $ _15.00_

R10

517-453095

**First National Bank in Libby**
LIBBY, MONTANA 59923

⑆092102851⑆ 293-4633

SIGN HERE _Naomi Schmitz_

ADDRESS _Hartman Trailer Court_

070 ⑆000001900⑆

Kathryn Dianne Taylor was arrested on March 22, 1987, and charged in the District Court, Nineteenth Judicial District, Lincoln County, with issuing bad checks by common scheme, a felony, under § 45-6-316, MCA. Her case was tried without a jury and the District Court made findings of fact and conclusions of law to the effect that the withdrawal slips so negotiated to merchants were "an order for the payment of money" making her guilty under the statute. She was sentenced to the maximum provided for such a common scheme felony--ten years in the Women's Correctional Center at Warm Springs. Her court-appointed counsel has appealed the conviction to this Court, contending that the withdrawal slips negotiated by her were not in any case a "check or order" and thus she was improperly convicted.

Our statutes define the crime of theft as follows:

45-6-301. Theft.. . . (2) a person commits the offense of theft when he purposely or knowingly obtains by threat or deception control over the property of the owner and:

(a) has the purpose of depriving the owner of the property;. . .

On the other hand, the crime of issuing a bad check is defined:

45-6-316. Issuing a bad check. (1) A person commits the offense of issuing a bad check when he issues or delivers a check or other order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.

. . .

(3) A person convicted of issuing a bad check shall be fined not to exceed $500 or be imprisoned in the county jail not to exceed 6 months, or both. If the offender is engaged in issuing bad checks which are part of a common scheme . . . he shall be

- 4 -

fined, not to exceed $50,000 or be imprisoned in the state prison not to exceed 10 years, or both.

Without doubt, the actions of Kathryn Dianne Taylor in negotiating withdrawal slips as checks was a deception which constituted theft under § 45-6-301, MCA. However, if the withdrawal slips as presented could qualify "as a check or other order" and the misdemeanors which Kathryn Dianne Taylor had committed were part of a common scheme, she could be convicted of a felony, notwithstanding the total amount involved in the 9 withdrawal slips is less than $300. The State chose the felony charge for obvious, though unstated reasons: a felony conviction would remove Kathryn Dianne Taylor from the streets of Libby (and its county jail) for a protracted period; the county would be spared the expense of her continuing incarceration; and her felony conviction would remove her continuing danger to merchants who could not discern between a withdrawal slip and a check.

It should be noted, however, that the Libby bank which issued the withdrawal slip forms would honor as checks such forms as negotiated by Kathryn Dianne Taylor, had she had sufficient funds in the Libby bank. Nonetheless, on each of the three rejection forms in evidence authored by the bank in returning these purported checks, the bank noted on each "not a check."

The question for us to decide in this case, therefore, is whether the withdrawal slips negotiated by Kathryn Dianne Taylor, as checks constitute in each case, "a check or other order" within the purview of our statute defining the crime of issuing a bad check. If so, her conviction must be upheld; if not, a reversal is in order.

How is this Court to construe statutes which define criminal offenses? We are told in § 45-1-104, MCA, that no conduct constitutes an offense unless it is described "as an

offense in this code or in another statute in this state." We are further told that the general purposes of the provisions governing the definition of offenses are "to safeguard conduct that is without fault from condemnation as criminal, to give fair warning of the nature of the conduct declared to constitute an offense, and to differentiate unreasonable grounds between serious and minor offenses." Section 45-1-102, MCA. One charged with crime has a right "to demand the nature and cause of the accusation." Art. II, § 24, 1972 Mont. Const. This Court has stated that a statute which carries a penalty, making its violation a crime, should be expressed with a degree of certainty such that what must be observed or done may be understood without relying on inferences. State v. Salina (1944), 116 Mont. 478, 154 P.2d 484. We have said that no interpretation should be given any word which would make an act a crime unless it is clear the legislature intended that interpretation should be given the word. State v. Duran (1953), 127 Mont. 233, 259 P.2d 1051. Yet there could be no doubt that if the statute defining the offense of issuing a bad check is applicable here, the State cannot be faulted for pursuing a felony conviction instead of misdemeanor conviction. See State v. Evans (1969), 153 Mont. 303, 456 P.2d 842.

The District Court concluded that the documents tendered by Kathryn Dianne Taylor for savings withdrawal slips were written to make them appear to be checks. The documents were offered as checks and accepted as checks by the various businesses. The court concluded that the documents constituted an order for the payment of money. It further concluded that the documents had all the elements required by the bank to be paid provided the maker had a valid account with the bank.

Our criminal statutes do not define either a "check" or an "order" but one or the other is a necessary element to a crime under § 45-6-316, MCA. In that circumstance, we may turn to the provisions of the Uniform Commercial Code for guidance. See Faulkner v. State (Alaska 1968), 445 P.2d 815.

Under the definitions of instruments in the Uniform Commercial Code, withdrawal slips in this case are neither a "check" nor an "order" for the payment of money. To be a "check," the instrument must contain an unconditional promise or order to pay a sum certain in money, and it must be payable to order or to bearer. Section 30-3-104, MCA. An instrument which complies with the requirements of § 30-3-104 is a check, if it is a draft drawn on a bank and payable on demand. It is a "draft" if it is an order, § 30-3-104(2)(a)(b). An "order" is a direction to pay and must be more than an authorization or request. It must identify the person to pay with reasonable certainty. Section 30-3-102(b), MCA.

When we examine the withdrawal slips in this case, we do not find therein any promise or order to pay any person. In other words, it is not "payable to order or bearer." The names of the purported payees under these checks appear under the account number, a space that is obviously intended for the name in which the account is held. The writing itself is not an order to pay but an instruction to the bank to "deduct the above sum from my savings account." This language does not meet the requirement that an "order" must be a direction to pay. See People v. Norwood (1972), 26 Cal.App.3d 148, 103 Cal.Rptr 7 (a savings account draft is not a "check").

The laws defining criminal offenses are not rubberbands to be stretched to cover any social purpose, however worthy. It would be an affront to our honor as jurists to construe these instruments for criminal purposes as anything but

withdrawal slips, and to designate them as checks or orders for the payment of money. The findings of the District Court reveal the deception in which the defendant engaged to pass off these instruments: that others had accepted them, that she was using these slips until she got her checks, that she was in the process of moving and had been unable to transfer funds from her savings account to her checking account. She was obtaining the property of others through deception, a theft, under § 45-6-301, MCA. The prosecution should have occurred under the statute defining the offense of theft.

Because withdrawal slips negotiated through deception are not checks or orders for the payment of money, the conviction in this case of Kathryn Dianne Taylor is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices