Filed 8/12/15  People v. Morales CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B257333 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA109499) |
| v. | |
| JULIO MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry S. Knupp, Judge.  Affirmed as modified.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

Julio Morales was convicted by jury in 2011 of raping an unconscious person in violation of Penal Code section 261, subdivision (a)(4).[1] In a prior appeal, we reversed his conviction due to instructional error and remanded for a retrial.[2] (*People v. Morales* (2013) 212 Cal.App.4th 583 (*Morales*)). On remand, defendant again was found guilty. Defendant raises four arguments in this appeal. First, he argues that the trial court erred by not instructing the jury on the *Mayberry* defense, which would have enabled the jury to find him not guilty if he had held a reasonable and good faith belief that the victim consented. (*People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*).) Second, he argues that a portion of the jury instructions contravened our holding in the prior appeal and incorrectly prevented the jury's consideration of the issue of consent. Third, he contends that the cumulative effect of the above errors prejudiced his due process right to a fair jury determination of his guilt. Fourth, he argues that the court's imposition of a $280 restitution fine violated his constitutional protections against ex post facto laws and double jeopardy.

We conclude that defendant's first three arguments are without merit. However, we further conclude that the trial court violated the California Constitution's ex post facto prohibition as well as its double jeopardy prohibition in increasing the restitution fine to $280 from the $200 restitution fine imposed at the original trial. Thus, we affirm the judgment and modify the restitution fine to be in the amount of $200.

---

[1]    Further unspecified statutory references are to the Penal Code.

[2]    The error was due to an anachronism in former section 261, subdivision (a)(4), which made sexual intercourse by impersonation a rape only when the victim was married. (*Morales, supra*, 212 Cal.App.4th at p. 595.) The statute was amended in September 2013. (Stats. 2013, ch. 259, § 1 (AB No. 65).)

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

A few hours after midnight on February 21, 2009, 18-year-old Jane Doe left a party with her boyfriend Victor, her brother F., and several of her brother's friends, including defendant. Jane had consumed four to five beers. Jane, Victor, and a friend picked up fast food and went to Jane's house to eat, where Jane changed into pajamas before eating. Defendant arrived with F. and several others shortly afterward. After eating in the living room, Jane and Victor went into her bedroom and lay down on the bed. They discussed having sex, but declined because Victor did not have a condom. About one hour later, Victor left Jane, who was then asleep, and returned to his house. Defendant, F., and two or three others were in the living room when Victor left.

Jane awoke to the sensation of sex. She saw defendant's face by a sliver of light coming through the door. She pushed back, and defendant grabbed her thighs and reinserted his penis into her vagina. She began yelling and crying, and defendant then left the room. Jane immediately telephoned Victor, who drove back to Jane's house. Victor saw defendant walking away from Jane's house and called the police shortly after arriving at the house.

Los Angeles County Sheriff Deputy Peralta saw defendant several blocks from the house, and another deputy eventually arrested him. Jane identified defendant in a lineup. While detained in Peralta's patrol car, defendant spoke to Deputy Sheriff Judith Leyn.

After receiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), defendant told Deputy Leyn the following: He saw Victor leave the house. He noticed that Jane was asleep. He lay down on her bed and began rubbing her vagina, and noticed she was still asleep. He then tried to leave the room, but the

3

door was being held shut so he returned and began kissing Jane. She began kissing him back. He got on top of her, pulled her pajama bottoms down to her thighs, and inserted his penis into her vagina. Jane began to wake, and defendant told her he was not her boyfriend. Jane began screaming, and defendant left the house and started walking home.

About seven hours after this oral statement, defendant gave a written statement at the police station.

*Defense Evidence*

After Victor left Jane's house, defendant and his friend Tony entered Jane's room, at Tony's suggestion. They attempted to wake Jane so she could drink with them, but she remained asleep. Defendant tried to leave the room, but the door was shut and it appeared to defendant that someone was holding the door closed. Tony was no longer in the room. Defendant nudged Jane again, but she did not move. The two began kissing with the lights still off, and some of Jane's clothing was removed. Defendant believed Jane was awake because she was kissing him back and had put her hand on his shoulder. The two began having sex. Defendant stopped when he realized he was betraying his girlfriend; he left the room despite some resistance from the other side of the door. Defendant began walking home. He hid from the police because he did not want to get a ticket for being a minor under the influence of alcohol.

*Procedural Background*

On October 1, 2009, the People charged defendant with raping an unconscious person, in violation of section 261, subdivision (a)(4). A jury found defendant guilty in December 2010.

Following our reversal and remand, in March 2014, a jury again found defendant guilty of rape of an unconscious person in violation of section 261, subdivision (a)(4).  At sentencing, the court stated that it concurred with the sentence imposed after defendant's first trial and therefore sentenced him to a prison term of three years, which defendant already had served.  The court also ordered defendant to "pay the $280 restitution fine, if not already paid."  Appellant filed a timely notice of appeal.

## DISCUSSION

I.    *Failure to Instruct on the* Mayberry *Defense Was Not Error*

Defendant argues that the trial court erred by not instructing the jury on the *Mayberry* defense:  that a defendant who has a reasonable and good faith belief that a person voluntarily consented to sexual intercourse lacks the wrongful intent necessary to be convicted of rape by force or threat.  (*Mayberry*, *supra*, 15 Cal.3d at p. 155.)  The *Mayberry* defense is inapposite for several reasons.

First, *Mayberry* concerned rape by force or threat, not rape of an unconscious person.  (*Mayberry*, *supra*, 15 Cal.3d at pp. 154-155.)

More importantly, in our prior opinion, we held that defendant's belief as to the victim's consent is not relevant.  (*Morales*, *supra*, 212 Cal.App.4th at p. 596.)  "Under the law of the case doctrine, when an appellate court '"states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ."'  [Citation.]"  (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)  The evidence on retrial of the issue must be "'substantially the same'" as that upon which the previous appellate ruling was based.  (*Ibid.*)  Because we already have decided the issue, and the

5

evidence on retrial was substantially the same as the evidence on which our prior opinion was based, we reject defendant's argument regarding the *Mayberry* defense.[3]

In the prior appeal, defendant argued that, "in light of his testimony that Jane appeared to respond favorably to his kisses and touching, the trial court erred by failing to give instructions that would have allowed the jury to consider his good faith, but mistaken, belief that Jane had consented to sexual intercourse with him." (*Morales, supra*, 212 Cal.App.4th at p. 596.) We addressed the issue on the ground that it was likely to arise on retrial and held that "[t]he defendant's belief as to the victim's consent is not relevant; it is the defendant's knowledge that the victim was unconscious and his intent to engage in an act of sexual intercourse with an unconscious person that makes that act a crime under section 261, subdivision (a)(4). [Citation.]" (*Ibid.*) This holding is law of the case.

The evidence on retrial was substantially the same as that on which our prior opinion was based. In the prior appeal, defendant relied on his testimony that Jane appeared to respond favorably to his kisses and touching to argue that the trial court erroneously failed to instruct the jury that he held a good faith belief that Jane consented to sexual intercourse. (See *Morales*, *supra*, 212 Cal.App.4th at p. 588 ["He thought she was not asleep because she responded to his kisses."].) On retrial, defendant again testified that he believed Jane was awake because she returned his kisses and placed her hand on his shoulder and neck. There is no material difference between the evidence on which our prior opinion was based and the evidence on retrial. The trial court did not err in not instructing on the *Mayberry* defense.

---

[3] We further note that, by finding defendant guilty of rape of an unconscious person, the jury necessarily determined that Jane was not able to give consent.

II.    *CALCRIM No. 1003 Did Not Misstate the Law*

The trial court instructed the jury pursuant to CALCRIM No. 1003.  The court included the following instruction:  "The People are not required to prove a lack of consent.  Consent occurs when the person acts freely and voluntarily with knowledge of the nature of the act or transaction involved.  [¶]  A woman is unconscious of the nature of the act if she is unconscious, asleep, or not aware that the act is occurring.  If a woman is unconscious or asleep, she necessarily does not act freely and voluntarily with knowledge of the nature of the act."

Defendant argues that the phrase, "knowledge of the nature of the act or transaction," misstated the law on two grounds.  First, defendant contends that the instruction prevented the jury's fair consideration of the issue of consent by focusing the jury's attention on Jane's perception of events rather than on defendant's belief as to Jane's consent.  Second, defendant contends that the instruction directly contravenes our holding in *Morales*.  We are not persuaded.

First, as discussed above, consent is not relevant to the charged crime.  (*Morales*, *supra*, 212 Cal.App.4th at p. 596.)  Thus, even if the instruction focused the jury on Jane's perception of events rather than defendant's belief as to her consent, this focus is inconsequential.  Rather, "it is the defendant's knowledge that the victim was unconscious and his intent to engage in an act of sexual intercourse with an unconscious person that makes that act a crime under section 261, subdivision (a)(4)." [Citation.]" (*Ibid.*)  The jury was properly instructed that, to find defendant guilty, the prosecution must prove that "[t]he defendant knew that the woman was unable to resist because she was unconscious of the nature of the act."

As for defendant's second argument, he simply contends that the instruction "directly contravenes [our] explicit holding" on pages 589-596 of our prior

7

opinion, and does not explain this argument any further. "We will not address a claim that defendant has failed to develop. [Citations.]" (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467; see also *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 [arguments asserted perfunctorily and insufficiently developed are not cognizable on appeal]; Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "support each point by argument"].)

Defendant contends that the cumulative effect of the alleged errors regarding the *Mayberry* defense and the jury instruction prejudiced his right to due process. Because we have found no error, there is no cumulative effect that may have prejudiced the jury's verdict.

III.    *The Increase of the Restitution Fine from $200 to $280 Violated Proscriptions Against Ex Post Facto Laws and Against Double Jeopardy*

Defendant contends that the trial court violated constitutional proscriptions against ex post facto laws by imposing a restitution fine in the amount of $280 rather than $200.[4] Defendant argues that the court mistakenly applied the version of section 1202.4 in effect at the time of sentencing, rather than the version in effect at the time of his offense. In his reply brief, he further contends that the increased fine violated the state constitutional prohibition against double jeopardy.

---

[4]    In 2009, section 1202.4, subdivision (b)(1) set the minimum restitution fine for a felony at $200 and the maximum at $10,000. The statute was amended in 2011 to provide in part: "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000), . . . ." (§ 1202.4, subd. (b)(1).)

8

When defendant originally was sentenced, the court ordered him to pay a $200 restitution fine under section 1202.4, subdivision (b), the minimum amount under the statute at the time. Following his retrial, the court stated that it agreed with the sentence imposed by the trial judge in defendant's prior trial and then ordered defendant "to pay the $280 restitution fine, if not already paid." The court did not explain the reason for the discrepancy between the $200 originally imposed and the $280 amount. Defendant's trial counsel did not object.

The application of the law in effect at the time of a defendant's sentencing rather than the law applicable at the time of the offense violates the constitutional prohibition against ex post facto laws. (*People v. Souza* (2012) 54 Cal.4th 90, 143 (*Souza*).) "It is well established that the imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions. [Citations.]" (*Ibid.*)

Defendant concedes that he did not challenge the $280 restitution fine below. Respondent accordingly contends that defendant has forfeited his challenge to the amount imposed. Defendant contends that the fine is an unauthorized sentence and thus may be raised for the first time on appeal.

"[W]hile a trial court objection is generally necessary to preserve a claim of sentencing error for appeal, a 'narrow exception' exists when the trial court has imposed an '"unauthorized sentence."' [Citation.] A challenged sentence falls within this exception when it 'could not lawfully be imposed under any circumstance in the particular case,' such that it is '"clear and correctable" independent of any factual issues presented by the record at sentencing.' [Citation.] In contrast, 'claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually

9

flawed manner.' [Citation.]" (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1309.)

Respondent counters that the sentence was not unauthorized because the maximum fine under the statute in effect at the time of his offense was $10,000. (See *People v. Kramis* (2012) 209 Cal.App.4th 346, 349-350.) Thus, the argument goes, a fine of $280 was within the court's discretion to impose.

Notwithstanding defendant's failure to challenge the amount of the fine below, we exercise our discretion to address the issue for several reasons. First, the California Supreme Court has explained that when "applying a forfeiture rule . . . would likely have the effect of converting an appellate issue into a habeas corpus claim of ineffective assistance of counsel for failure to preserve the question by timely objection . . . , we would be loath to invoke a rule that would proliferate rather than reduce the nature and scope of legal proceedings. [Citation.] After all, judicial economy is a principal rationale of the forfeiture doctrine. [Citation.]"[5] (*People v. Butler* (2003) 31 Cal.4th 1119, 1128; see also *People v. Turner* (1990) 50 Cal.3d 668, 708 [addressing claim not raised in trial court "to forestall claims of ineffective assistance"]; *People v. Barber* (2002) 102 Cal.App.4th 145, 150 [constitutional issues not raised below may be reviewed on appeal]; *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1173 [exercising discretion to address issue not raised below "in order to avoid a subsequent habeas corpus proceeding raising the same point"]; *People v. Norwood* (1972) 26 Cal.App.3d 148, 153 (*Norwood*) ["A matter normally not reviewable upon direct appeal, but

---

[5] Trial counsel's failure to challenge the fine could constitute ineffective assistance. (See *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1190 (*Martinez*) [holding that trial counsel's "fail[ure] to object to the trial court's mistaken use of the minimum statutory fine that was in effect at sentencing to calculate appellant's restitution fund fine," in violation of ex post facto laws, constituted ineffective assistance].)

10

which is shown by the appeal record to be vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal. [Citations.]"].)

In addition, we disagree with respondent's contention that the record is unclear that the court intended to impose the minimum fine authorized by section 1202.4 at the time of the offense. The court's order to pay $280 in restitution was not the "only comment" made by the trial court in imposing sentence. Rather, the court explicitly stated that it had "read and considered" the sentence imposed in the prior case and concurred with the prior judgment before ordering defendant to "pay the $280 restitution fine, if not already paid." The court's comments indicate its intent to impose the same fine imposed following defendant's first trial.

"The prohibition against ex post facto laws applies to restitution fines. [Citations.]" (*Martinez, supra*, 226 Cal.App.4th at p. 1189; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.) In *Martinez*, similar to the instant case, the trial court imposed a restitution fine based on the $280 minimum in the 2013 version of section 1202.4, even though the minimum restitution fine was $200 at the time the defendant committed his offenses. On appeal, the court stated that it could not "conceive of any tactical reason for counsel's failure to object" to the trial court's use of the minimum statutory fine in effect at the time of sentencing and found trial counsel's performance deficient. (*Martinez, supra*, 226 Cal.App.4th at p. 1190.) The court thus recalculated the restitution fine and modified the judgment. (*Id.* at pp. 1190-1191; see also *Souza, supra*, 54 Cal.4th at p. 143 [recalculating a restitution fine under section 1202.4 because it violated the statutory maximum under the statutes applicable at the time of the defendant's crimes]; *Valenzuela, supra*, 172 Cal.App.4th at pp. 1248-1250 [modifying a fine under § 290.3, subd. (a) to reflect amounts in effect at the time of the offense];

11

*People v. Saelee* (1995) 35 Cal.App.4th 27, 31 [defendant could not be burdened with increased minimum fine under Gov. Code, § 13967, "which was not in effect at the time the offenses were committed"].)

In addition to being prohibited by the prohibition against ex post facto laws, the increased restitution fine here violated double jeopardy principles and thus was an unauthorized sentence.[6] "When a defendant successfully appeals a conviction and is retried and reconvicted on the same charge, the constitutional prohibition against double jeopardy precludes imposition of a more severe punishment after the second conviction than was imposed after the first. [Citation.]" (*People v. Daniels* (2012) 208 Cal.App.4th 29, 31-32 (*Daniels*), citing *People v. Hanson* (2000) 23 Cal.4th 355, 358 (*Hanson*); Cal. Const., art. I, § 15 [a person "may not

---

[6] Although defendant characterizes his challenge to the increased restitution fine as an ex post facto claim in his opening brief, he further challenges it on double jeopardy grounds in his reply brief. We ordinarily do not consider arguments raised for the first time in an appellant's reply brief because to do so would unfairly deprive the respondent of an opportunity to respond. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) Nevertheless, we may address the double jeopardy question as an issue of law because it is undisputed that defendant received a $200 restitution fine after his first trial and a $280 restitution fine following the retrial. (See *People v. Masotti* (2008) 163 Cal.App.4th 504, 508 [question of law not asserted by the parties may be addressed where necessary]; *Norwood, supra*, 26 Cal.App.3d at p. 152 ["An appellate court may note errors not raised by the parties if justice requires it. [Citations.]"]; see also *People v. McCullough* (2013) 56 Cal.4th 589, 594 [legal error in sentencing asserted for the first time on appeal may be addressed "'because such error is "clear and correctable" independent of any factual issues presented by the record at sentencing.'"].)

Moreover, the failure to assert double jeopardy in the trial court could constitute ineffective assistance. (See, e.g., *People v. Holloway* (2004) 33 Cal.4th 96, 155, fn. 18 [considering merits of double jeopardy claim despite defendant's failure to raise the issue in the trial court because of ineffective assistance claim]; *People v. Marshall* (1996) 13 Cal.4th 799, 824, fn. 1 [although defendant raised double jeopardy claim for the first time on appeal, the court addressed the issue, stating, "If . . . a plea of former jeopardy had merit and trial counsel's failure to raise the plea resulted in the withdrawal of a crucial defense, then defendant would have been denied the effective assistance of counsel to which he was entitled."].) We therefore address the argument on the merits.

twice be put in jeopardy"].)  The California Supreme Court explained in *Hanson* that an increase in a restitution fine following a successful appeal may constitute "vindictiveness" for successfully attacking a conviction or have a "chilling effect" on a defendant's right to appeal.  (*Hanson*, *supra*, 23 Cal.4th at p. 366.)

In *Daniels*, the defendant was ordered to pay $3,400 in restitution after his first trial.  However, after his conviction was overturned on appeal, he was retried and reconvicted.  Following his second trial, he was ordered to pay $10,000 in restitution.  The appellate court addressed the defendant's double jeopardy argument, despite his failure to object to the sentence below, and ordered the restitution fine reduced to the amount ordered following the first trial.  (*Daniels, supra*, 208 Cal.App.4th at pp. 31-33.)

Similarly, in *People v. Wardell* (2008) 162 Cal.App.4th 1484, the defendant's sentence after his first trial included a $200 restitution fine.  However, following his successful appeal and retrial, the trial court imposed a $10,000 restitution fine.  Stating that "'a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal,'" the appellate court modified the judgment to reduce the restitution fine to $200.  (*Id.* at p. 1496.)

Pursuant to *Hanson*, *Daniels*, and *Wardell*, the increase in the restitution fine following defendant's second trial violated the constitutional prohibition against double jeopardy.  We therefore modify the judgment to reduce the restitution fine from $280 to $200.

**DISPOSITION**

The judgment is modified by reducing the $280 restitution fine to $200.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

14