Filed 11/12/24  P. v. Ledesma CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063032 |
| v. | (Super. Ct. No. 06NF4409) |
| DAVID LEDESMA, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from orders of the Superior Court of Orange County, Lewis W. Clapp, Judge. Affirmed in part, reversed in part, and remanded with directions. Respondent's motion to dismiss is denied.

Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

In 2006, David Ledesma, Jr., was 17 years old when he shot someone. The prosecution directly filed a case in "adult" criminal court. In 2008, Ledesma was convicted of attempted murder and street terrorism with gang and firearm enhancements. In 2012, following two appeals, a trial court sentenced Ledesma to life in prison with a minimum 15-year term, plus a consecutive term of 25 years to life (effectively 40 years to life).

In 2022, a California Department of Corrections and Rehabilitation (CDCR) analyst notified the trial court of a possible error in its calculation of presentence credits recorded in the 2012 abstract of judgment. After the court set the matter on calendar, Ledesma filed a motion asking the trial court to transfer his case to a juvenile court for a retroactive fitness hearing. (See *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 (*Lara*).)

In September 2023, the trial court recalculated the number of presentence credits, denied Ledesma's motion for a retroactive fitness hearing, and later filed an amended abstract of judgment.

On appeal, Ledesma claims the trial court's recalculation of his credits caused his prior judgment to become nonfinal, and therefore the court erred by denying his motion for a retroactive fitness hearing. The Attorney General (AG) argues the court's orders were not appealable, and therefore the AG moves to dismiss Ledesma's appeal.

We find the court's recalculation of Ledesma's presentence credits did not vacate or affect the finality of his 2012 judgment; therefore, the court did not commit error when it denied Ledesma's motion for a retroactive fitness hearing. However, we also find the court's recalculation of credits was an appealable postjudgment order affecting his substantial rights (in fact, the recalculation was wrong); therefore, the AG's motion to dismiss is denied.

Effective January 1, 2024, while Ledesma's appeal was pending

2

in this court, the Legislature amended Penal Code section 1172.1.[1] In relevant part, the statute now allows a trial court to recall and resentence a defendant on its own motion "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1).)

We affirm the trial court's denial of Ledesma's motion for a retroactive fitness hearing. We reverse the trial court's recalculation of presentence credits and remand the matter so the trial court can correct its error and amend the abstract of judgment. Further, due to the intervening amendment of section 1172.1, and in the interests of justice, we direct the trial court on remand to allow Ledesma to invite the court—on its own motion— to recall his sentence and to resentence him.[2]

I.

PROCEDURAL BACKGROUND

On June 26, 2007, the People filed an information charging Ledesma with attempted murder and street terrorism. The People further alleged gang and firearm enhancements. The crimes were alleged to have occurred on December 13, 2006, when Ledesma was 17 years old. The People directly filed the case in "adult" criminal court.

On September 10, 2008, a jury found Ledesma guilty of the charged crimes and found the sentencing allegations to be true.

---

[1] Undesignated statutory references are to the Penal Code.

[2] If the trial court elects to recall (vacate) Ledesma's sentence, this would result in a retroactive fitness hearing (by law) as we shall discuss in this opinion. (See *People v. Padilla* (2022) 13 Cal.5th 152, 158 (*Padilla*).)

3

On July 10, 2009, the trial court imposed a sentence of 40 years to life. The court awarded Ledesma 1,081 total days of presentence credits (940 custody and 141 conduct credits). The sentence and credits were later recorded on an abstract of judgment.

On October 1, 2010, this court affirmed Ledesma's convictions, but remanded the matter for resentencing. (*People v. Ledesma* (Oct. 1, 2010, G042332) [nonpub. opn.] ["it is up to the trial court to clarify its intentions and fulfill its original sentencing objectives"].)

On February 18, 2011, the trial court again imposed a sentence of 40 years to life. The court adjusted the presentence credits, now awarding Ledesma 1,723 total credits (1,498 custody and 225 conduct credits). The sentence and credits were later recorded on an amended abstract of judgment.

On September 19, 2011, this court again affirmed Ledesma's convictions, and again remanded the matter for resentencing. (*People v. Ledesma* (Sept. 19, 2011, G044846) [nonpub. opn.] ["the court can repeat the sentencing choices made at the last sentencing hearing with the exception of striking the gang enhancement"].)

On January 13, 2012, the trial court again imposed an effective sentence of 40 years to life (life in prison with a minimum 15-year term, plus a consecutive 25 years to life). The court again adjusted the presentence credits, now awarding Ledesma 2,142 total credits (1,863 custody and 279 conduct credits). The sentence and credits were later recorded on an amended abstract of judgment dated April 27, 2012.

On September 13, 2012, after Ledesma's counsel filed a "*Wende* brief," this court affirmed the judgment. (*People v. Ledesma* (Sept. 13, 2012, G046366) [nonpub. opn.]; *People v. Wende* (1979) 25 Cal.3d 436.)

4

On October 20, 2022, a CDCR analyst sent a letter to the superior court, which stated:

"A review of the documents delivered with the above-named inmate indicates the Abstract of Judgment and/or Minute Order may be in error, or incomplete, for the following reasons:

"The Amended Abstract of Judgment and Minute Order dated April 27 2012 reflect a total of 2,142 credits (1,863 actual and 279 local conduct). The Appellate court . . . held that when the trial court resentences a defendant who has already commenced serving a term for the crime, the trial court should only compute the actual time spent in prison following the initial sentencing. It is the responsibility of the [CDCR] to determine the amount of worktime credit to which an inmate is entitled from the date of the initial sentencing. At the time of defendant's original sentencing, he was granted a total of 1,081 days (940 actual and 141 local conduct). The Amended Abstract should reflect the recalculated conduct credits prior to the original sentencing date and the CDCR will apply the appropriate amount of behavioral credits from the original sentence date to the re-sentence date.

"Please review your file to determine if a correction is required. When notified by the [CDCR] that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices, People v. Hill 185 CalApp.3d 831. We would appreciate your providing a certified copy of any Minute Order or modified Abstract of Judgment to this Department. May we also request the attached copy of this letter be returned with your response."

On November 8, 2022, the superior court set the matter on calendar, and forwarded copies to the Orange County District Attorney and the Office of the Public Defender.

On August 15, 2023, Ledesma filed a document captioned:

5

"Resentencing brief: invitation for court to transfer case to juvenile court under Proposition 57." (Capitalization & boldface omitted.)

On September 6, 2023, the trial court: 1) denied Ledesma's motion for a retroactive fitness hearing; 2) reinstated the July 10, 2009, award of 1,081 total credits (940 actual and 141 conduct credits); and 3) ordered that an amended abstract of judgment be sent to the CDCR, along with a copy of the CDCR's October 20, 2022, letter. Ledesma appealed.

On August 14, 2024, this court invited the parties to address the January 1, 2024, amendments to section 1172.1 in supplemental briefs.

## II.

## DISCUSSION

This appeal raises pure questions of law; therefore, we apply an independent standard of review. (*In re Dezi C*. (2024) 16 Cal.5th 1112, 1128.)

In this discussion, we shall: A) analyze Ledesma's claim that he was entitled to a retroactive fitness hearing; B) analyze the AG's motion for dismissal; and C) analyze the trial court's calculation of Ledesma's credits.

### A. Retroactive Fitness Hearing

Ledesma argues: "The recalculating of credits effectively caused what had been a final judgment to become a nonfinal judgment such that appellant had a right to the ameliorative benefits of Proposition 57." (Capitalization omitted.) We disagree.

Ordinarily, when a crime is alleged against a person under 18 years old, the prosecution files a case "within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." (Welf. & Inst. Code, § 602, subd. (a).) Prior to the passage of Proposition 57, a prosecutor

6

also had the sole discretion to directly file a case against a minor 14 years of age or older in "adult" criminal court when certain crimes were alleged. (Former § 707, subd. (d), repealed by Prop 57, § 4.2, as approved by voters, Gen. Elec. (Nov. 8, 2016) eff. Nov. 9, 2016.)

In 2016, the electorate approved Proposition 57, which effectively eliminated direct filing by prosecutors in criminal courts. (*Lara*, *supra*, 4 Cal.5th at p. 305.) Since November 9, 2016, a minor's juvenile case can now be transferred to a criminal court in certain cases, but only after the prosecution files a motion to do so, and a juvenile court conducts a "fitness hearing," to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can likely be rehabilitated in juvenile court. (Welf. & Inst. Code, § 707.)

In 2018, the California Supreme Court held that the ameliorative benefits of Proposition 57—a retroactive fitness hearing in a juvenile court prior to the transfer of a case to an "adult" criminal court—applied to all affected criminal cases that were not yet final on appeal. (*Lara*, *supra*, 4 Cal.5th at p. 312.) "'The amendatory act . . . can be applied constitutionally to acts committed before its passage *provided the judgment convicting the defendant of the act is not final.*" (*Id.* at p. 307, italics added.)

"Newly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date." (*People v. Gentile* (2020) 10 Cal.5th 830, 852.) This presumption "rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657.)

7

In 2022, the California Supreme Court further held that the ameliorative benefit of Proposition 57 "applies during *resentencing* when a criminal court sentence imposed on a juvenile offender before the initiative's passage *has since been vacated.*" (*Padilla*, *supra*, 13 Cal.5th at p. 158, italics added.) In *Padilla*, defendant was 16 years old when he killed his mother. (*Id.* at p. 159.) Prior to Proposition 57, the case was tried in adult criminal court, where Padilla was convicted of murder and sentenced to life without the possibility of parole (LWOP). However, "his judgment later *became nonfinal* when his sentence *was vacated* on habeas corpus and the case was returned to the trial court for imposition of a *new sentence.*" (*Id.* at p. 158, italics added.) The trial court again imposed an LWOP sentence. On appeal, Padilla claimed "that he was entitled to a transfer hearing under Proposition 57 because his case became nonfinal once his sentence was vacated." (*Id.* at p. 159.) The Supreme Court agreed. (*Id.* at pp. 159, 170.)

"The Attorney General concedes that *the vacatur of Padilla's sentence made the judgment in his case nonfinal.* We agree. A case is final when 'the criminal proceeding as a whole' has ended . . . and 'the courts can no longer provide a remedy to a *defendant on direct review' . . . . When Padilla's sentence was vacated*, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him . . . . His judgment thus became nonfinal, and it remains nonfinal in its present posture . . . ." (*Padilla*, *supra*, 13 Cal.5th at pp. 161–162, italics added.)

Here, on January 13, 2012, the trial court imposed Ledesma's current sentence of life in prison with a minimum 15 year term, plus a consecutive 25 years to life (effectively 40 years to life). On September 13, 2012, this court affirmed the judgment. (*People v. Ledesma*, *supra*, G046366.)

Ledesma did not challenge the 2012 opinion, so his judgment

became final. (See Cal. Rules of Court, rule 8.366 [an appellate decision generally becomes final 30 days after filing]; *People v. Vieira* (2005) 35 Cal.4th 264, 306 ["a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed"].)

Unlike the situation in *Padilla*, Ledesma's 2012 sentence was never vacated in a habeas corpus proceeding (or otherwise), and his case did not return to the trial court for the purposes of altering his 40 years to life sentence. Rather, the matter returned to the trial court because a CDCR records analyst notified the court in October 2022 that the "Abstract of Judgment and/or Minute Order may be in error, or incomplete" due to the court's mistaken calculation of presentence credits.

In short, we find that the trial court properly denied Ledesma's motion for a retroactive fitness hearing because his sentence was never vacated and therefore the judgment never became "nonfinal" as in *Padilla*. (Compare *Padilla*, *supra*, 13 Cal.5th at p. 161 ["The Attorney General concedes that the *vacatur* of Padilla's sentence made the judgment in his case nonfinal"], italics added.) Thus, we affirm the ruling of the trial court.

Ledesma argues that section 1172.1, and the case of *People v. Hill* (1986) 185 Cal.App.3d 831 (*Hill*), compel a different result. We disagree.

Under former section 1170, subdivision (d)(1), and currently under section 1172.1, a trial court can recall a sentence at any time upon the recommendation of the secretary of the CDCR and "resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence."

(§ 1172.1, subd. (a).)[3] Under this provision, when the CDCR "notifies the trial court of an illegality in the sentence," "[t]he court is entitled to rethink the entire sentence . . . ." (*Hill*, *supra*, 185 Cal.App.3d at p. 834.)

In *Hill*, defendant pleaded guilty to four counts, and the trial court imposed an aggregate 16-year sentence. (*Hill*, *supra*, 185 Cal.App.3d at p. 833.) The CDCR later notified the court "that the sentence was erroneous. According to the trial court's understanding of the error, the 16-year sentence was illegal . . . ." (*Id.* at p. 833, fn. omitted.) After receiving the notification of an illegal sentence, the court vacated the defendant's original sentence, and imposed a revised sentence of 14 years, comprised of two consecutive terms and two concurrent terms for each of the four counts. (*Ibid.*) Defendant appealed, arguing that the trial court only had jurisdiction to correct an error identified by the CDCR as to two of the four counts. (*Id.* at pp. 833–834.) The appellate court disagreed. (*Id.* at p. 836.)

"When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme. Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices. [Citations.] This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme. [Citation.] We see no reason why this reasoning should not apply where, as here, the [CDCR] rather than the Court of Appeal notifies

_____

[3] Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1-7) effective January 1, 2022, moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to new section 1170.03. Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats 2022, ch. 58, § 8) effective June 30, 2022, renumbered section 1170.03 to section 1172.1, with no substantive changes.

10

the trial court of an illegality in the sentence. The trial court is entitled to rethink the entire sentence to achieve its original and presumably unchanged goal." (*Hill, supra,* 185 Cal.App.3d at p. 834; see also *People v. Codinha* (2023) 92 Cal.App.5th 976, 995 [the full resentencing rule applies when the trial court is required to exercise discretion].)

Unlike the notification in *Hill,* the letter from the CDCR in this case did not notify the trial court "that the sentence was erroneous." (*Hill, supra,* 185 Cal.App.3d at p. 833.) Rather, the CDCR letter notified the court that due to an error in calculating credits, "the Abstract of Judgment and/or Minute Order may be in error, or incomplete."

According to the CDCR, the trial court had awarded Ledesma additional local conduct credits to which he was not entitled: "It is the responsibility of the [CDCR] to determine the amount of worktime credit to which an inmate is entitled from the date of the initial sentencing." The *Hill* opinion does not alter our analysis because no aspect of Ledesma's sentence was illegal, and the correction of presentence credits did not require the court to exercise its discretion; therefore, the reasoning behind the full resentencing rule as stated in *Hill* does not apply.[4] (See *Hill, supra,* 185 Cal.App.3d at p. 834.)

Here, the only aspect of Ledesma's 2012 judgment that changed was his presentence credits. That type of correction "does not involve a

---

[4] The CDCR letter alerting the trial court to a possible error in Ledesma's presentence credits did cite *Hill,* but this appears to be part of its boilerplate language: "Please review your file to determine *if* a correction is required. When notified by the [CDCR] that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices, People v. Hill 185 Cal.App.3d 831."(Italics added.) Notably, the CDCR letter did <u>not</u> notify the trial court that any illegality existed within Ledesma's sentence.

discretionary sentencing choice but is a purely mathematical calculation." (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1485; see also *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139 ["The calculation of credits is not discretionary" because "there are no 'choices'" for the trial court to make]; *People v. Jack* (1989) 213 Cal.App.3d 913, 917 ["the trial court exercises no discretion when determining the days of presentence custody"]. Therefore, although Ledesma's presentence credits appropriately needed to be corrected, that adjustment did not vacate Ledesma's 2012 sentence.

Indeed, when the trial court denied Ledesma's motion for a retroactive fitness hearing, the court made clear it was correcting only the credits and not changing the sentence: "What I see is the court gave the defendant a certain amount of time, and that sentence was not incorrect or illegal. The court gave the defendant a legal sentence. And that legal sentence is going to remain the sentence, at least as far as I'm concerned. The only thing that needs to change is the calculation of how many credits he gets. And that's going to be done."[5]

Our reasoning is consistent with the rationale in two relatively recent cases: *People v. Humphrey* (2020) 44 Cal.App.5th 371 (*Humphrey*); and *People v. Magana* (2021) 63 Cal.App.5th 1120 (*Magana*).

In *Humphrey*, *supra,* 44 Cal.App.5th 371, defendant was sentenced to a 19-year prison term. (*Id.* at p. 373.) About five years later, an employee of the CDCR sent a letter to the trial court, "stating that the abstract of judgment 'may be in error, or incomplete.'" (*Ibid.*) The abstract properly reflected the 19-year sentence, but "the component parts of the

---

[5] The trial court, in fact, incorrectly recalculated Ledesma's presentence credits as we will review more fully later in this opinion.

12

sentence related to each count and enhancement did not track what the court stated at the sentencing hearing." (*Id.* at pp. 374–375.) In response to the letter from the CDCR case records analyst, the trial court set a hearing and "clarified" the sentence, then issued an amended abstract, which again imposed the same, original 19-year prison sentence. (*Id.* at pp. 373–374.) A month later, defendant filed a motion for resentencing, asking the trial court to strike a firearm enhancement under the amelioratory authority of Senate Bill No. 620 (2017–2018 Reg. Sess. (Stats. 2017, ch. 682, §§ 1-2, eff. Jan. 1, 2018). (*Id.* at p. 376.) The trial court denied the motion and the Court of Appeal affirmed. (*Id.* at pp. 379–380.)

The *Humphrey* court rejected defendant's claim that the trial court had recalled (voided) the sentence, finding the court had merely "correct[ed] a clerical error in the abstract of judgment." (*Humphrey*, *supra*, 44 Cal.App.5th at p. 379.) The CDCR letter from the analyst "made no reference to the court's authority to recall the defendant's sentence" and at the hearing the "court did not mention [former] section 1170, subdivision (d)(1)." (*Id.* at p. 378.) Rather, the court had "specifically stated" it was correcting clerical errors. (*Id.* at p. 379.) The court held that because defendant's sentence had not been recalled, the trial court had properly denied defendant's motion for a full resentencing hearing. (*Id.* at p. 380.)

Similarly in *Magana*, *supra*, 63 Cal.App.5th pages 1122-1123, defendant was given a sentence consisting of determinate and indeterminate terms. About 12 years later, "the CDCR notified the trial court that the abstract of judgment 'may be in error, or incomplete.'" (*Id.* at p. 1123.) Defendant filed a motion asking the court to dismiss a firearm enhancement and two prison priors due to intervening, ameliorative changes in the law. (*Ibid.*) The court denied defendant's motion, issued an amended abstract of

13

judgment, and imposed the same total aggregate sentence. (*Id.* at p. 1124.) "The trial court found that the CDCR's letter concerned a 'technical issue in the abstract,' and that no legal authority permitted a resentencing." (*Ibid.*) The Court of Appeal agreed. (*Id.* at pp. 1125–1126.)

The *Magana* court rejected defendant's claim that the CDCR's letter was a recommendation for a recall and resentencing. (*Magana, supra,* 63 Cal.App.5th at p. 1125.) The court noted that "nothing in the CDCR's letter referenced [former] section 1170, subdivision (d)(1), and the letter did not use any form of the terms 'recall' or 'resentencing.' Rather, the CDCR's letter specifically asked the trial court to determine whether 'a correction is required.'" (*Ibid.*) "Thus, as in *Humphrey* [,*supra*, 44 Cal.App.5th 371], the trial court properly denied defendant's motion for a full resentencing hearing because defendant's sentence was not recalled pursuant to section 1170, subdivision (d)(1)." (*Magana, supra,* 63 Cal.App.5th at p. 1126.)

Here, as in *Humphrey* and *Magana*, the instant CDCR letter from an analyst—not the secretary of the CDCR—made no reference to the court's statutory authority to recall (vacate) and resentence, nor did the letter recommend that Ledesma's sentence be recalled and that he be resentenced. (See § 1172.1, subd. (a)(1).) And, similar to what happened in *Humphrey*, the trial court specifically stated that it was not correcting an illegal sentence. (*Humphrey, supra,* 44 Cal.App.5th at p. 379.)

Ledesma's case may be contrasted with other cases in which the CDCR specifically recommended that a trial court resentence a defendant. (See *People v. McCallum* (2020) 55 Cal.App.5th 202, 206 [the CDCR recommended defendant's sentence be recalled and that he be resentenced "based on his violation-free conduct while in prison and his completion of nine college classes, a substance abuse program, and other counseling and self-

14

awareness programs"]; see also *People v. Loper* (2015) 60 Cal.4th 1155, 1158 [CDCR "recommended that defendant's sentence be recalled"].)

Ledesma argues *Humphrey*, *supra*, 44 Cal.App.5th 371, and *Magana*, *supra*, 63 Cal.App.5th 1120, are distinguishable because they both involved a discrepancy between the oral pronouncement of sentence and the abstract of judgment, whereas in this case the trial court miscalculated the presentence credits. We find this to be a distinction without a meaningful difference. Here, as in *Humphrey* and *Magana*, the CDCR never made a recommendation to the court to recall (vacate) Ledesma's sentence, and the court never did so; therefore, Ledesma's sentence never became nonfinal as in *Padilla*, *supra*, 13 Cal.5th 152, and *Hill*, *supra*, 185 Cal.App.3d 831.

To reiterate and conclude, Ledesma was not entitled to a retroactive fitness hearing because his 2012 judgment never became "nonfinal" due to a vacatur of his sentence. Thus, we affirm the trial court's denial of Ledesma's request for a retroactive fitness hearing.

## B. Motion to Dismiss

The AG moves to dismiss claiming the trial court's correction of credits did not affect Ledesma's substantial rights and therefore the court's orders on September 6, 2023, were not appealable. We disagree.

Generally, a criminal defendant has the statutory right to appeal "a final judgment of conviction." (§ 1237, subd. (a).) A criminal defendant also has the right to appeal "any order made after judgment, affecting the substantial rights of the party." (§ 1237, subd. (b).)

"[A] postjudgment order 'affecting the substantial rights of the party' (§ 1237, subd. (b)) does not turn on whether that party's claim is meritorious, but instead on the nature of the claim and the court's ruling

15

thereto." (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 600.)

Ordinarily, a postjudgment order regarding presentence credits is appealable. (*People v. Grainer* (1982) 133 Cal.App.3d 636, 642 (*Grainer*).) In *Grainer*, defendant was sentenced to prison, but he was released on bail pending appeal. After losing on direct appeal, defendant surrendered into custody and the trial court later denied a motion for resentencing. (*Id.* at pp. 637–638.) Defendant then appealed, in part, from the court's alleged error when it computed his credits for the "days he had spent in custody between his surrender and the commitment." (*Id.* at p. 638.) The Court of Appeal held this "was an order 'affecting . . . [defendant's] . . . substantial rights' because it will figure in the calculation of the time he must serve pursuant to the sentence imposed on him . . . . In the unusual sequence of this case, it was also an 'order made after judgment.'" (*Id.* at p. 642.)

Here, on September 6, 2023, the trial court recalculated Ledesma's credits and denied his motion for a retroactive fitness hearing. The court rejected Ledesma's claim that the trial court's recalculation of credits caused his prior judgment to become nonfinal. On that same day, Ledesma filed a notice of appeal from the trial court's orders. We find the court's postjudgment recalculation of credits affected Ledesma's substantial rights "because it will figure in the calculation of time he must serve pursuant to the sentence imposed on him." (See *Grainer*, *supra*, 133 Cal.App.3d at p. 642.) Therefore, he had the right to appeal from that order, which was also the basis of his motion for a retroactive fitness hearing.

Thus, we deny the AG's motion to dismiss Ledesma's appeal.

The AG argues that the Court of Appeal's opinion in *Magana*, *supra*, 63 Cal.App.5th 1120, compels a different result. We disagree.

As we have already discussed, the *Magana* court held that a

16

notification from the CDCR that the defendant's abstract of judgment may be in error or incomplete was not a recommendation for recall and resentencing. (See 1172.1, subd. (a)(1).) The court further "found that the trial court 'was without jurisdiction to resentence' and thus that the order denying the defendant's motion for resentencing was not an appealable order." (*Magana, supra*, 63 Cal.App.5th at p. 1127.) The *Magana* court then dismissed defendant's appeal. (*Id*. at p. 1128.)

Here, unlike *Magana*, the CDCR's letter was not a notification to correct a possible error regarding Ledesma's *sentence*.  Rather, the CDCR's letter in this case was a notification to correct a possible error regarding the calculation of Ledesma's *presentence credits*. As the AG concedes, a trial court has the inherent authority to correct a clerical error that does not amount to a substantive change to a sentence. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; see also *People v. Fares* (1993) 16 Cal.App.4th 954, 958–959.)

Thus, unlike the situation in *Magana*, the trial court had proper jurisdiction of Ledesma's case, and he has the statutory right to appeal. (§ 1237, subd. (b) [a criminal defendant has the right to appeal "any order made after judgment, affecting the substantial rights of the party"].)

To reiterate and conclude, we hold that (1) the trial court had jurisdiction to correct its calculation of Ledesma's presentence credits, (2) the court's calculation of Ledesma's presentence credits was a postjudgment order affecting Ledesma's substantial rights; and (3) Ledesma had the right to appeal. Thus, we deny the AG's motion to dismiss Ledesma's appeal.

## C. Presentence Credits

We now turn to the trial court's 2023 purported correction of Ledesma's credits, as recorded in the 2012 amended abstract of judgment.

17

(See *People v. Norwood* (1972) 26 Cal.App.3d 148, 152 ["An appellate court may note errors not raised by the parties if justice requires it"].)

In this part of the discussion, we shall: 1) review relevant principles of law; 2) summarize the trial court proceedings; and 3) analyze the law as applied to the facts.

*1. Relevant Principles of Law*

A defendant convicted of a felony is generally entitled to credits applied against an eventual "term of imprisonment" for any actual time spent in custody before sentencing (custody credits). (§ 2900.5, subd. (a).) The location of a defendant's custody commitment includes "any time spent in a *jail*, camp, work furlough facility, halfway house, rehabilitation facility, hospital, *prison*, juvenile detention facility, or similar residential institution." (§ 2900.5, subd. (a), italics added.)

In addition to custody credits, additional credits are ordinarily available to a prisoner for good conduct during presentence confinement (conduct credits). (See, e.g., § 4019, subd. (c) ["For each four-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from the prisoner's period of confinement"]; see also § 2931, subd. (a) ["In any case in which a prisoner was sentenced to the state prison . . . the [CDCR] shall have the authority to reduce the term prescribed under such section . . . for good behavior and participation"].)

In the event that a defendant is resentenced in a trial court following an appeal, the California Supreme Court has determined how custody and conduct credits are ordinarily to be calculated. (See *People v. Buckhalter* (2001) 26 Cal.4th 20.) At the time of resentencing, a court should: (1) grant custody credits for all actual days served *prior to resentencing* (both

18

in local custody and in prison); and (2) add the conduct credits for any time spent in local custody *prior to the initial sentencing*. (*Id*. at pp. 23–24.) Any conduct credits earned *after the initial sentencing* are <u>not</u> to be computed by the resentencing court (because after the initial sentencing and CDCR commitment, the defendant remains in the custody of CDCR, regardless of where he or she may be temporarily housed). (*Id*. at pp. 29–30.) That is, any conduct credits for any time after the initial sentencing are to be computed by the CDCR using formulas that apply to postsentence prison time. (*Ibid*.)

*2. Trial Court Proceedings*

At Ledesma's three sentencing hearings, the trial court awarded credits as follows (the same effective sentence of 40 years to life was imposed at each sentencing hearing):

| Date | Total Credits | Custody Credits | Conduct Credits |
|------|---------------|-----------------|-----------------|
| July 10, 2009 (Initial Sentencing) | 1,081 | 940 | 141 |
| February 18, 2011 (First Resentencing) | 1,723 | 1,498 | 225 |
| January 13, 2012 (Second Resentencing) | 2,142 | 1,863 | 279 |

The trial court recorded the above credits in the three abstracts of judgment, which were filed shortly after the respective hearings. The abstract of judgment for the second resentencing was filed on April 27, 2012.

On October 20, 2022, the superior court received the CDCR letter regarding Ledesma's 2012 abstract of judgment. The letter stated: "The

19

Amended Abstract of Judgment and Minute Order dated April 27 2012 reflect a total of 2,142 credits (1,863 actual and 279 local conduct)." The CDCR informed the court "that when the trial court resentences a defendant who has already commenced serving a term for the crime, the trial court should only compute the actual time spent in prison following the initial sentencing. It is the responsibility of the [CDCR] to determine the amount of worktime credit to which an inmate is entitled from the date of the initial sentencing."

On September 6, 2023, after reading briefs filed by both parties, and hearing arguments from opposing counsel, the trial court denied Ledesma's motion for a retroactive fitness hearing.

The court said the CDCR's letter had informed the court that it had made a mistake "by recalculating additional credits once he came back on appeal . . . . And so I'm going to say fine, go ahead and recalculate them." The court continued: "But I'm not going to change the sentence. It's going to be the same sentence, the same credits as he was granted at the time of the original sentencing. And the [CDCR] will take it from there as far as the calculation of any additional credits he should receive. [¶] The [CDCR] is also asking us to provide a certified copy of our minute order or our modified abstract of judgment, which we will do, and we'll attach a copy of the letter and send that back to them."

On September 8, 2023, the trial court filed an amended abstract of judgment, regarding the change in credits it had determined on September 6, 2023, regarding the relevant resentencing hearing on January 13, 2012. The court did not change Ledesma's 2012 sentence. The court amended the 2012 abstract of judgment to record 1,081 total credits (940 actual custody and 141 local conduct credits). These were the credits that were awarded at the initial sentencing on July 10, 2009.

*3. Application and Analysis*

The trial court's recalculation of custody credits on September 6, 2023, and the recording of those credits in the amended abstract of judgment were incorrect. This is because the court awarded Ledesma the same number of local custody credits (jail time) he was granted at the initial sentencing on July 10, 2009, without accounting for his additional time spent in custody (prison time) until his second resentencing on January 13, 2012.

Again, at the time of resentencing, a trial court should: (1) grant custody credits for all actual days served in custody *prior to resentencing* (both in local custody and in prison); and (2) add the conduct credits for any time spent in local custody *prior to the initial sentencing*.

| Date | Total Credits | Custody Credits | Conduct Credits |
|---|---|---|---|
| July 10, 2009 (Initial Sentencing) | 1,081 | 940 | 141 |
| February 18, 2011 (First Resentencing) | 1,723 | 1,498 | 225 |
| January 13, 2012 (Second Resentencing) | 2,142 | 1,863 | 279 |

Therefore, in order to calculate the correct number of total credits for the January 13, 2012, resentencing, the court should have granted 1,863 days of custody credits, which is the number of credits for all the actual days Ledesma was in custody *prior to the second resentencing* (both in jail and in prison). The court then should have added 141 days of conduct credits, which is the number of conduct credits that Ledesma earned while in local custody *prior to the initial sentencing*.

Thus, we are reversing the trial court's September 6, 2023, order regarding Ledesma's presentence credits because it was wrong. On remand, we are instructing the court to correctly recalculate Ledesma's credits; and prepare and forward to the CDCR an amended abstract of judgment that accurately reflects the total number of presentence credits that should have been given on January 13, 2012, at the second resentencing hearing. [6]

Additionally, in the interests of justice, we are instructing the trial court on remand to allow Ledesma to invite the court—on its own motion—to recall (vacate) his sentence and to transfer his case to juvenile court for a retroactive fitness hearing, due to recent changes in the law.

Prior to January 1, 2024, a trial court could only recall and resentence a defendant sentenced to state prison on its own motion within 120 days after the date of commitment. (§ 1172.1, former subd. (a)(1) by Stats. 2022. ch. 58, § 9.)

After January 1, 2024, section 1172.1 now provides:

"When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the [CDCR] . . . the court may, *on its own motion*, within 120 days of the date of commitment *or at any time* if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence. Recall and resentencing under this

---

[6] It appears that the correct adjusted number should have been 2,004 total credits (1,863 custody and 141 local conduct credits), rather than 1,081 total credits (940 custody and 141 local conduct credits).

section may be initiated by the original sentencing judge, a judge designated by the presiding judge, or *any judge with jurisdiction* in the case." (§ 1172.1, subd. (a)(1), italics added.)

In recalling and resentencing, the trial court "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).)

Criminal defendants, although not expressly permitted to initiate recall and resentencing proceedings themselves, may nonetheless "invite" the court to exercise its discretionary powers. (Cf. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497; *People v. Carmony* (2004) 33 Cal.4th 367, 375 ["A defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385. But he or she does have the right to 'invite the court to exercise its power'"].)

Here, the trial court denied Ledesma's motion for a retroactive fitness hearing and recalculated his custody credits on September 6, 2023. We presume that if this matter had been before the trial court judge after January 1, 2024, Ledesma would have also filed a motion to "invite" the court to exercise its new discretionary powers to recall and resentence (grant his request for a retroactive fitness hearing) under section 1172.1. (Cf. *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th 497; *People v. Carmony*, *supra*, 33 Cal.4th 367.) Further, the instant appeal was not yet final in this court on January 1, 2024. (See *In re Estrada*, *supra*, 63 Cal.2d at pp. 744–745.)

In the interests of justice, we are directing the trial court on remand to allow Ledesma to invite consideration for relief. (See § 1260 [appellate court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)

23

III.

DISPOSITION

The trial court's order denying Ledesma's motion for a retroactive fitness hearing is affirmed. The court's order recalculating Ledesma's presentence credits is reversed. The matter is remanded.

The trial court is directed to allow Ledesma to invite the court to exercise its discretion to recall and resentence him.[7] The court is further directed to recalculate Ledesma's presentence credits, to award him the correct number of credits, and to prepare an amended abstract of judgment and forward a copy to the CDCR as needed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.

---

[7] We take no position on whether the trial court should exercise its discretion. "If a defendant requests consideration for relief under this section, the court is not required to respond." (§ 1172.1, subd. (c).)

24